UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMMAD MAHASHIN,

              Petitioner,

    v.

WARDEN NORTHWEST DETENTION
CENTER, et al.,

           Respondents.

CASE NO. 2:26-cv-00579-JHC

ORDER

**I**

**INTRODUCTION**

    This matter comes before the Court on Mohammad Mahashin's pro se Petition for Writ of Habeas Corpus.  Dkt. # 1.  The Court has reviewed the materials filed in support of and in opposition to the Petition, the rest of the record, and the governing law.  Being fully advised, for the reasons below, the Court GRANTS the Petition.  Dkt. # 1.

ORDER - 1

## II

### BACKGROUND

Petitioner is a non-U.S. citizen who is a native and citizen of Bangladesh.  Dkt. # 6 at 2; Dkt. # 1 at 2.  He is also a citizen of St. Lucia.[1]  Dkt. # 6 at 2; Dkt. # 1 at 6.  Petitioner entered the U.S. on October 26, 2024, and was immediately taken into custody.  Dkt. # 6 at 2.  He was soon after served a Notice to Appear charging him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i).  Dkt. # 6 at 2.

Petitioner filed for asylum and related relief with the aid of counsel.  Dkt. # 6 at 2; Dkt. # 1 at 6.  On June 13, 2025, an immigration judge denied Petitioner's asylum claim, but granted withholding of removal to Bangladesh, and ordered Petitioner removed to St. Lucia.  Dkt. # 6 at 3.  Petitioner's appeal of this decision is pending before the Ninth Circuit, and a temporary stay of removal was granted.[2]  Dkt. # 6 at 3; Dkt. # 9 at 3-6; see *Mahashin v. Bondi*, No. 26-739 (9th Cir. Feb. 12, 2026).

Petitioner twice requested a bond hearing: first on December 30, 2024, and second on May 16, 2025, but both times the Executive Office for Immigration Review rejected the filing because Petitioner was represented by counsel and counsel must submit the request.  Dkt. # 6 at 2-3.  Petitioner is detained at the Northwest ICE Processing Center (NWIPC).  Dkt. # 6 at 2.

---

[1] Petitioner's briefing contains a few contradictions, including as to his citizenship.  *See* Dkt. # 1 at ¶¶ 3-4 (claiming Bangladesh to be Petitioner's only country of citizenship and on the next line claiming to have citizenship in Bangladesh and St. Lucia).  The Court resolves such conflicts in favor of the facts as stated in Respondents' brief.  On reply, Petitioner does not contradict Respondents' statement of facts.  *See* Dkt. # 8.

[2] It is unclear from the briefing if Petitioner understands the nature of this appeal and the underlying order.  For example, he claims the order became final when ICE failed to appeal and that he "won" his immigration proceedings.  *See* Dkt. # 1 at 2.

ORDER - 2

# III

## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, arguing his prolonged detention violates his right to adequate procedural protections. Dkt. # 1 at 7. But before turning to the constitutional question, the Court must first consider the statutory framework under which Petitioner is detained.

A.     Statutory Framework

Respondents assert Petitioner is detained under 8 U.S.C. § 1225(b). Dkt. # 5 at 4. To support this position, Respondents cite a recent Fifth Circuit decision finding that noncitizens who have not been admitted are "applicants for admission" subject to mandatory detention under § 1225(b). Dkt. # 5 at 4 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026)). But that out-of-Circuit decision does not bind the Court, and a case posing a similar question is pending before the Ninth Circuit. *See Rodriguez-Vazquez v. Bostock, et al.*, No. 25-6842 (9th Cir. argued and submitted March 3, 2026). Even so, because Petitioner does not counter the assertion, the Court assumes without deciding that Petition is detained under § 1225(b).[3] *See generally* Dkt. # 1, 8.

---

[3] Petitioner does not assert the specific statute under which he is detained, but he does cite a few statues under which he could be detained. He primarily cites 8 U.S.C. § 1226(c), but this provision applies to the detention of criminal noncitizens. Respondents do not say Petitioner is a criminal noncitizen nor does the record support such a conclusion, and therefore this statute apparently does not apply to Petitioner. Petitioner also cites § 1226(a) but does not argue its application to his detention. At any rate, if § 1226(a) did apply to him, then he would be entitled to a bond hearing all the same. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196-97 (9th Cir. 2022).

ORDER - 3

B.      Due Process

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]"[4]  The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that

---

[4] Petitioner also asks this Court to prohibit the government from removing him to a third country. Dkt. # 1 at 2; Dkt. # 8 at 11-13.  But Petitioner does not allege the government has informed him he will be removed to a third country and nothing in the record appears to reflect such potential removal.  *See generally* Dkt. ## 1, 6, 7, 8.  Petitioner was granted withholding of removal to Bangladesh, but he was denied that relief as to St. Lucia.  Dkt. # 7-4 at 2.  And thus, he has a removal order to St. Lucia where he is a citizen and has a valid passport.  *Id*; Dkt. # 6.  Petitioner has not alleged that St. Lucia will not accept him.  *See generally* Dkt. ## 1, 8.  For these reasons, the Court need not consider this claim for relief.  *See Sanchez v. Bondi*, No. C25-2573-KKE, 2026 WL 160882, at *6 (W.D. Wash. Jan. 21, 2026) (denying a similar request where petitioner "provides no facts specific to [their] circumstances that support enjoining Respondents from removing him to 'any third country,' such as identifying a target third country where he might suffer persecution or torture"); *Duong v. Warden, Golden State Annex Det. Facility*, No. 1:25-CV-1771 DAD CSK P, 2026 WL 177767, at *10 (E.D. Cal. Jan. 22, 2026), *report and recommendation adopted sub nom. Duong v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-01771-DAD-CSK, 2026 WL 330628 (E.D. Cal. Feb. 6, 2026) ("Because nothing before the Court shows any basis for petitioner's third country removal claims, this Court finds that petitioner lacks standing to raise his third party removal claims at this time.").

ORDER - 4

those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so.").

While the standard test for evaluating due process claims is established in *Mathews*, 424 U.S. 319, district courts across the country and particularly in this jurisdiction consider due process challenges to mandatory detention pursuant to § 1225(b) under a multi-prong test explained in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019).[5]  The Court considers: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings cause by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."  *Banda*, 385 F. Supp. 3d at 1106 (quoting Report & Recommendation (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).[6]

---

[5] The *Banda* court declined to apply the *Mathews* factors because the *Mathews* test is to "resolve the question of 'whether the administrative procedures provided . . . are constitutionally sufficient'" but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided."  *Banda*, 385 F. Supp. 3d at 1006-07.  And thus, the test would not be "particularly probative."  *Id.*  This jurisdiction has regularly applied *Banda*, and this Court does the same.  *See Chekhovskii v. Scott*, No. 2:25-CV-02550-TLF, 2026 WL 353265 (W.D. Wash. Feb. 9, 2026); *Andrei Galkin v. Bruce Scott*, No. 2:26-CV-00530-TLF, 2026 WL 632663 (W.D. Wash. Mar. 6, 2026); *Kumar v. Hermosillo*, No. 2:26-CV-00389-JNW, 2026 WL 523276 (W.D. Wash. Feb. 25, 2026); *Tavurov v. Noem*, No. 2:26-CV-00138-TLF, 2026 WL 323054 (W.D. Wash. Feb. 6, 2026).

[6] Petitioner—who is detained and pro se—makes his primary arguments applying the *Mathews* factors and argues his detention is indefinite under *Zadvydas*, 533 U.S. 678, and at times references inapplicable statutes. Dkt. # 1 at 9-17.  As explained, *Mathews* is inapplicable.  *Zadvydas* is also inapplicable as Petitioner is not subject to a final removal order.  *See* 533 U.S. at 699.  While Petitioner does not articulate the *Banda* factors, the Court still applies them.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (internal citation, emphasis, and quotation marks omitted).  Respondents have conducted the *Banda* analysis and Petitioner has made an adequate showing that can be applied to the *Banda* factors and requested a bond hearing as alternative relief.  Dkt. # 5 at 6-7; *see also* Dkt. # 1 at 3, 8, 10-11 (requesting a bond hearing under § 1226(a) in the alternative and requesting the application of *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 206 (3d Cir. 2020), which required a bond hearing for a noncitizen detained under § 1226(c)).

ORDER - 5

First, the length of detention "is the most important factor" and "[i]t is important to bear in mind the context: [t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released.'" *Banda*, 385 F. Supp. 3d at 1118 (quoting *Jamal*, 358 F. Supp. 3d 853 at 859). Petitioner has been detained for about 16 months. Dkt. # 8 at 2. As Respondents concede, this factor favors Petitioner, and the Court finds it strongly favors granting Petitioner a bond hearing. Dkt. # 5 at 5; *see also Banda*, 385 F. Supp. 3d at 1118 (finding 17 months to be a "very long time" "strongly favor[ing] granting" a bond hearing and collecting cases granting bond hearings after as short as 9 months detention).

Second, "the Court considers how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal*, 358 F. Supp. 3d 853 at 859). Petitioner asserts his "detention is likely to continue." Dkt. # 1 at 16. Respondents argue "all that remains" is Petitioner's appeal before the Ninth Circuit. Dkt. # 5 at 5. While that is true, it does not speak to the length of his appeal.

Petitioner only recently filed his appeal to the Ninth Circuit, and it can be a process lasting months to years. Dkt. # 6 at 3 (Petition for Review filed February 6, 2026); *see Banda*, 385 F. Supp. 3d at 1119 (Ninth Circuit appeals "may take up to two years or longer"); *Chekhovskii v. Scott*, 2026 WL 353265, at *4 ("According to the Ninth Circuit's public website, it takes approximately 6 to 12 months from the date of the notice of appeal to oral argument and, following argument, most cases take three months to a year for the Court of Appeals to decide the case."); *see also Mahashin v. Bondi*, No. 26-739 (9th Cir. Feb. 6, 2026) (Opening Brief due Apr. 27, 2026; Answering Brief due May 27, 2026; Optional Reply Brief due 21 days after Answering Brief). The Ninth Circuit has granted a stay of removal, and so it is unlikely

ORDER - 6

Petitioner will be removed before the appeal concludes. *See Mahashin v. Bondi*, No. 26-739 (9th Cir. Feb. 12, 2026). This factor also favors Petitioner.

Third, the Court considers conditions of confinement. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger [their] argument that [they are] entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal*, 358 F. Supp. 3d 853 at 859). Petitioner says he "faces severe hardships while detained by ICE. Petitioner is held in a locked down facility, with limited freedom of movement and access to Petitioner's family or support network." Dkt. # 1 at 12 (citing *Jennings*, 583 U.S. at 329 (Breyer, J., dissenting) (describing immigration detention conditions which in some cases "are inappropriately poor")). Petitioner says NWIPC is a facility operated by a private, for-profit prison contractor, and thus his "conditions of confinement are not meaningfully different from those of criminal punishment." Dkt. # 1 at 16-17; Dkt. # 8 at 5.[7]

He adds that NWIPC has "unsafe conditions" and that he has been "assaulted by other inmates while in custody." Dkt. # 8 at 6, 9; *see* Dkt. # 9 at 24 (treated for hip pain after reporting "another person hit him"). Petitioner also says he suffers from medical conditions that cannot be adequately treated at the detention facility and submits his health records showing that he suffered on and off respiratory problems and pain. Dkt. # 8 at 6, 9; *see* Dkt. # 9 at 14 (likely suffered from an upper respiratory infection for nearly two months). In response, Respondents only acknowledge that Petitioner is detained at NWIPC. Dkt. # 5 at 5. This factor favors Petitioner.

---

[7] To the extent Petitioner cites recent news articles and studies, the Court does not consider them as they are outside the scope of the Petition and primarily concern detention facilities where Petitioner is not held. There has not been a request for judicial notice.

ORDER - 7

Fourth, Respondents concede there has been no delay on Petitioner's part. Dkt. # 5 at 5. This factor is neutral. *See Chekhovskii*, 2026 WL 353265, at *6 (finding no delay on Petitioner's part a neutral factor).

Fifth, Petitioner does not allege Respondents intentionally delayed his immigration proceedings. *See generally* Dkt. ## 1, 8; *but see Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 931 (W.D. Wash. 2020) (finding that the fifth factor favored Petitioner even when delays were not intentional but "stemmed from the BIA's and Ninth Circuit's crowded dockets). Here, Petitioner's immigration proceedings, which are clearly legitimate as he was granted withholding of removal to Bangladesh, have taken well over a year and only continue—all while he is detained. This factor leans slightly towards Petitioner. *See Chekhovskii*, 2026 WL 353265, at *6.

Finally, the Court considers the likelihood that the removal proceedings will result in a final order of removal. "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. 3d at 1120. "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id*. As in *Banda*, Petitioner applied for asylum and other relief. That relief, in relevant part, was denied and Petitioner has appealed. And as in *Banda*, the Court "does not have sufficient information to determine whether the appeal is nonfrivolous or whether petitioner ultimately will prevail." *Id.* This factor is therefore neutral.

In sum, four factors weigh in Petitioner favor and two are neutral. Petitioner has not had a bond hearing, and his two tries to receive a hearing were rejected. *See* Dkt. 6 at 2-3. Accordingly, Petitioner's detention has become unreasonably prolonged and due process requires that he be granted an opportunity to be heard.

C.    Remedy

"When the Court has determined that a detainee has been subjected to mandatory detention under § 1225(b) for an unreasonably prolonged period in violation of due process, the proper remedy is a bond hearing; under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) the government bears the burden of proving the detainee is a danger or flight risk by clear and convincing evidence." *Chekhovskii*, 2026 WL 353265, at *6; *see Singh*, 638 F.3d 1196, *abrogation recognized on other grounds Rodriguez Diaz*, 53 F.4th at 1196, 1199 (explaining that clear-and-convincing-evidence standard in *Singh* was based on general principles of due process); *see also Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1321, n.5 (W.D. Wash. 2025) (explaining the present applicability of *Singh*).  Additionally, under *Singh*, there must be a contemporaneous record.  *Singh*, 638 F.3d at 1200.  As the Court finds Petitioner's detention to be unreasonably prolonged and in violation of due process, it finds that he is entitled to a bond hearing with the procedural requirements laid out in *Singh*.

## IV
### CONCLUSION

For the reasons above, the Court GRANTS the habeas petition (Dkt. # 1).  The Court further ORDERS:

1.    Respondents must provide Petitioner with a bond hearing within 14 calendar days of this order.  This bond hearing shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)—there must be a contemporaneous record of the hearing, and the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community;

ORDER - 9

2.    Alternatively, or if the bond hearing does not occur within 14 calendar days of the order, Respondents shall immediately release petitioner under appropriate conditions of release;

3.    Respondents must file a status report with the Court no later than 15 calendar days from this order.  The status report must detail if and when the bond hearing occurred, if the bond was granted or denied and, if denied, the reasons for that denial.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 11th day of March, 2026.

John H. Chun
United States District Judge

ORDER - 10